**In re EUA POWER CORPORATION, Debtor.**

**Bankruptcy No. 91–525.**

United States Bankruptcy Court, D. New Hampshire.

July 2, 1991.

Alan L. Lefkowitz, Dechert, Price & Rhoads, Boston, Mass., Daniel Sklar, Sklar Law Offices, Manchester, N.H., for debtor.

Albert Notini, Mark Polebaum, Hale & Dorr, Manchester, N.H., M. Douglas Dunn, Milbank, Tweed, Hadley & McCloy, New York City, for Bondholders' Committee.

## ORDER ON MOTION TO EXTEND EXCLUSIVITY

JAMES E. YACOS, Bankruptcy Judge.

The Court has before it a motion to extend exclusivity by the debtor which was heard on July 2, 1991. The exclusivity period of 120 days after the filing of the chapter 11 as provided by the Bankruptcy Code actually would have lapsed on June 27, 1991 but the Court, ex parte, extended that exclusivity until today's hearing date on the request of the debtor.

The bondholders' committee in May, 1991 filed a motion to shorten the exclusivity which has been rendered effectively moot by this scheduling but I have treated it as an objection to the request for extension of exclusivity by the debtor.

This Court in a case of *In re PSNH*, 88 B.R. 521 (Bkrtcy.D.N.H.1988) and 99 B.R. 155 (Bkrtcy.D.N.H.1989) has stated its understanding of the basic standards regarding extensions of exclusivity in chapter 11 reorganizations and I will not restate those at length here.

Suffice it to say that on this record this debtor has not made a showing of cause justifying an extension of the exclusivity. The debtor's reports show it operating at a loss and the debtor admits that it does not presently have in place any funding arrangement with regard a substantial cash payment that will be required in September with regard to its share of the expenses relating to the Seabrook nuclear power project.

This debtor's sole asset essentially is its approximately 12 percent share in the Seabrook project. This debtor also has had no specific progress to report with regard to any negotiations or arrangements for long term power purchase contract with regard to the Seabrook share of electricity that it has to offer for sale. The debtor apparently has been selling that power on a monthly basis both prepetition and postpetition as it can. The debtor acquired its interest in Seabrook in November of 1986.

During the course of the chapter 11 the debtor did file a motion to authorize borrowing from its parent corporation to solve some of these problems but that motion was almost immediately withdrawn. The parent corporation has not made a determination as to whether it will either inject some additional capital investment into this enterprise in order to protect and safeguard its equity investment or whether it will advance any funds under a borrowing arrangement that might be approved by the Court.

In consideration of all the circumstances of this reorganization that has been brought to my attention during this hearing it is my judgment that it is essential to open up the plan process in this case to competing plans to achieve a number of results that will foster hopefully a consensual reorganization or at any rate force

movement towards a reorganization that might be confirmed by the Court.

The parent corporation has to decide soon whether it is going to risk some money to protect its equity investment or not. I have said in many chapter 11 corporate reorganizations that equity holders that want to risk other people's money don't get very far in this Court. Secondly there needs to be some alternative approaches developed with regard to negotiating both short term financing arrangements to cover the immediate need for cash for the required Seabrook project cash payments as well as negotiation with regard to long term contractual arrangements for purchase of Seabrook power owned by this debtor.

I am satisfied that while the debtor is pursuing one course of action that may lead to those results it will be useful and appropriate for this reorganization that other alternative approaches be pursued. The bondholders committee is in a position to pursue those alternative approaches because it has the power to wipe out all debt service with regard to this enterprise by simply filing a plan that provides for conversion of its creditor position into equity position.

This Court can not judge and does not intend to judge what the likely success of those alternative approaches may be but it is sufficient for me to recognize and express the judgment that opening up the process to those alternative approaches in this particular case is desireable. The market will tell us the answer and I think that is appropriate on the facts of this case.

Whether competing plans actually result, and more importantly whether the competing plans actually go forward separately for confirmation hearings, is not necessary to address at this time. It may well be, as has been the experience in cases not only in this Court but in other courts, that while the process starts out after termination of exclusivity with competing plans the ongoing progress of the case results in compromises and negotiations whereby one joint plan goes forward.

That may well be the case here and hopefully it will be the case since the underlying rationale of the present chapter 11 of the Bankruptcy Code is to foster a consensual reorganizations. I disagree with those courts that in effect say that you've abandoned the effort for consensual reorganization when you terminate exclusivity.

I do not believe that has to be the case considering the discretion and flexibility that the reorganization judge has in terms of how the competing plans are handled. I have said all I really need to say in that regard in the *PSNH* case.

Accordingly the debtor's motion for extension of exclusivity is for all the foregoing reasons denied.

DONE and ORDERED.